

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**December 3, 2019 17:04**

By: DANIEL S. DUBOW 0095530

Confirmation Nbr. 1884273

DEBORAH KNIGHT

vs.

CLEVELAND CLINIC FOUNDATION, ET AL.

CV 19 926115

**Judge:** MAUREEN CLANCY

**Pages Filed:** 18


## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| DEBORAH KNIGHT<br>1882 Allendale Avenue<br>Cleveland, Ohio 44112<br><br>        Plaintiff,<br><br>    v.<br><br>THE CLEVELAND CLINIC FOUNDATION<br>3050 Science Park Dr.<br>Beachwood, Ohio 44122<br><br>    **Serve also:**<br>    The Cleveland Clinic Foundation<br>    c/o C T CORPORATION SYSTEM,<br>    4400 Easton Commons Way, Suite 125<br>    Columbus, Ohio 43219<br><br>    -and-<br><br>DESIREE KIRKWOOD<br>c/o The Cleveland Clinic Foundation<br>3050 Science Park Dr.<br>Beachwood, Ohio 44122<br><br>    **Serve also:**<br>    Desiree Kirkwood<br>    3349 W. 126th Street<br>    Cleveland, Ohio 44111<br><br>        Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Deborah Knight, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

### PARTIES AND VENUE

1. Knight is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. The Cleveland Clinic Foundation (the "Clinic") is a domestic not-for-profit corporation with its principal place of business located in Cleveland, Ohio.



3. Upon information and belief, Kirkwood is a resident of the state of Ohio.

4. Kirkwood was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at the Clinic who acted directly or indirectly in the interest of the Clinic.

5. Kirkwood was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

6. Kirkwood made and/or participated in the adverse actions asserted herein.

7. All of the material events alleged in this Complaint occurred in Cuyahoga County.

8. Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code § 2307.382(A)(1) and (4).

9. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

10. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

11. Knight is a former employee of the Clinic.

12. The Clinic hired Knight on or about April 20, 2017.

13. The Clinic employed Knight as a cardiac monitor technician.

14. Knight was diagnosed with cancer in 2014.

15. As a result of the cancer treatments Knight received, she developed small fiber neuropathy.

16. Knight's small fiber neuropathy causes intermittent pain and discomfort.

17. The symptoms resulting from Knight's small fiber neuropathy substantially impairs one or more major life functions including working.

18. As a result of suffering from small fiber neuropathy, Knight is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).



19. As a result of suffering from small fiber neuropathy, Knight is and was considered disabled within the meaning of the ADA 29 U.S.C. § 621 *et seq.*

20. In the alternative, Defendants perceived Knight as being disabled.

21. In the alternative, the Defendants perceived that Knight's medical condition constituted a physical impairment.

22. Despite this actual or perceived disabling condition, Knight was still able to perform the essential functions of her job with or without reasonable accommodations.

23. In or about July 2018, Knight applied for and started utilizing intermittent Family Medical Leave Act leave for her small fiber neuropathy.

24. As of July 2018, Knight was eligible to utilize FMLA leave.

25. Knight would use intermittent FMLA leave to treat flare ups caused by the small fiber neuropathy.

26. Knight received positive performance evaluations and/or reviews prior to her utilizing FMLA leave in 2018.

27. During all material events asserted herein, Knight reported to Kirkwood.

28. Kirkwood became aware that Knight suffered from small fiber neuropathy.

29. During all material events asserted herein, Kirkwood was responsible for putting into the Clinic's timekeeping system when Knight was utilizing FMLA leave.

30. During all material events asserted herein, Kirkwood has and/or had authority to hire, fire, and/or discipline employees.

31. Defendants assessed Knight with attendance points for dates and/or times where she requested to use FMLA leave.

32. Knight properly requested to use FMLA leave on November 27, 2018.

Electronically Filed 12/03/2019 17:04 / / CV 19 926115 / Confirmation Nbr. 1884273 / CLDLJ
The Employee's Attorney.™


33. Defendants assessed Knight attendance point(s) for November 27, 2018.

34. Knight properly requested to use FMLA leave on January 7, 2019.

35. Defendants assessed Knight attendance point(s) for January 7, 2019.

36. Knight properly requested to use FMLA leave on January 8, 2019.

37. Defendants assessed Knight attendance point(s) for January 8, 2019.

38. Knight properly requested to use FMLA leave on January 27, 2019.

39. Defendants assessed Knight attendance point(s) for January 27, 2019.

40. Disciplining an employee for utilizing FMLA leave violates the FMLA.

41. Knight advised Defendants that she was being assessed attendance points when she was requesting to use FMLA leave.

42. Defendants did not remove the attendance points she was assessed when the time off work should have been covered by FMLA leave.

43. When Defendants assessed Knight with attendance points, the attendance points would be visible to individuals with access to Knight's personnel file.

44. When Defendants assessed Knight with attendance points, the attendance points would be visible to individuals with access to see Knight's disciplinary record.

45. Knight did not have a meaningful history of discipline prior to utilizing FMLA leave in 2018 and early 2019.

46. Knight suffers from sleep apnea.

47. Knight first began suffering symptoms of sleep apnea in the middle of 2018.

48. Knight was then diagnosed with sleep apnea on or about November 28, 2018.

49. Knight's sleep apnea substantially impairs one or more of her major life functions including working.



50. As a result of suffering from sleep apnea, Knight is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

51. As a result of suffering from sleep apnea, Knight is and was considered disabled within the meaning of the ADA 29 U.S.C. § 621 *et seq*.

52. Kirkwood became aware that Knight suffered from sleep apnea.

53. In the alternative, Defendants perceived Knight as being disabled due to suffering from sleep apnea.

54. In the alternative, the Defendants perceived that Knight's sleep apnea to constitute a physical impairment.

55. Despite this actual or perceived disabling condition of sleep apnea, Knight was still able to perform the essential functions of her job with or without reasonable accommodations.

56. As Knight recognized that she suffered from symptoms of sleep apnea, she decided to participate in a sleep study on or about November 5, 2018 to try to determine the root of the problem.

57. On November 4, 2018, Knight advised Kirkwood that Knight was having problems sleeping.

58. On November 4, 2018, Knight advised Kirkwood that Knight would be participating in a sleep study to determine the root of her sleeping troubles.

59. Kirkwood knew or should have known as of November 4, 2018 that Knight was suffering from problems with sleeping.

60. Kirkwood knew or should have known that Knight suffered from a medical condition that substantially impaired her ability to sleep.

61. Alternatively, Kirkwood perceived Knight to suffer from a disability that would impact her ability to remain awake while at work.



62. On November 12, 2018, Defendants gave Knight a final written warning for sleeping on the job.

63. Upon information and belief, Defendants have a progressive disciplinary policy.

64. Defendants jumped to the final level of the disciplinary policy due to Knight's disability.

65. Alternatively, Defendants jumped to the final level of the disciplinary policy due to Knight's perceived disability.

66. Upon information and belief, Defendants do not jump to the final level of their progressive disciplinary policy for individuals who are not disabled.

67. Upon information and belief, Defendants do not jump to the final level of their progressive disciplinary policy for individuals who are not perceived to be disabled.

68. Defendants jumped to the final level of the disciplinary policy in retaliation for Knight utilizing FMLA leave.

69. Upon information and belief, Defendants do not jump to the final level of their progressive disciplinary policy for individuals who have not utilized FMLA leave.

70. Defendants did not remove the final written warning after learning of Knight's sleep apnea diagnosis.

71. Knight attempted to apply to a different position within the Clinic that would better suit her disabilities.

72. Knight's position required her to work 12-hour shifts.

73. The Clinic has positions that require employees to work 8-hour shifts.

74. Knight applied for 8-hour shifts as these would better accommodate her disabilities.

75. Knight told Kirkwood that she intended to apply for 8-hour shifts because they would better suit her disabilities.



76. Knight did not obtain any 8-hour shift positions she applied to.

77. Upon information and belief, Knight was not selected for the 8-hour shifts she applied to because of the final written warning she was issued.

78. Upon information and belief, Knight was not selected for the 8-hour shifts she applied to because of her attendance points.

79. Knight was not selected for the 8-hour shifts she applied to because of her disabilities.

80. Alternatively, Knight was not selected for the 8-hour shifts she applied to because of her perceived disabilities.

81. Knight was not selected for the 8-hour shifts she applied to in retaliation for utilizing FMLA leave.

82. Defendants terminated Knight's employment on February 4, 2019.

83. Defendants alleged that Knight was sleeping on the job again on January 26, 2019.

84. Defendants' reason for terminating Knight is a direct result of one of the common symptoms of sleep apnea.

85. Alternatively, Defendants' reason for terminating Knight's employment is a direct result of a perceived symptom of sleep apnea.

86. Defendants terminated Knight's employment because of her disabilities.

87. Alternatively, Defendants terminated Knight's employment because of her perceived disabilities.

88. Defendants terminated Knight's employment in retaliation for Knight utilizing FMLA leave.

89. Within 300 days of the conduct alleged above, Knight filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-01518 against the Clinic.



90. On or about September 18, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Knight regarding the Charges of Discrimination brought by Knight against the Clinic.

91. Knight received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

92. Knight has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

93. Knight has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*** 

94. Knight restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

95. Knight suffers from small fiber neuropathy.

96. Knight's small fiber neuropathy substantially impaired one or more of her major life activities including working.

97. As a result of suffering from small fiber neuropathy, Knight is disabled.

98. In the alternative, Defendants perceived Knight as being disabled as a result of her small fiber neuropathy.

99. Knight's small fiber neuropathy constituted a physical impairment.

100. Despite suffering from small fiber neuropathy, Knight could perform her essential job functions with or without reasonable accommodation(s).

101. Knight suffers from sleep apnea.

102. Knight's sleep apnea substantially impaired one or more of her major life activities including working.



103. As a result of suffering from sleep apnea, Knight is disabled.

104. In the alternative, Defendants perceived Knight as being disabled as a result of her sleep apnea.

105. Knight's sleep apnea constituted a physical impairment.

106. Despite suffering from sleep apnea, Knight could perform her essential job functions with or without reasonable accommodation(s).

107. Defendants treated Knight differently than other similarly-situated employees based on her disabling conditions.

108. Defendants failed to transfer Knight to an 8-hour shift position because of her disabilities.

109. Alternatively, Defendants failed to transfer Knight to an 8-hour shift position because of her perceived disabilities.

110. Alternatively, Defendants treated Knight differently than other similarly-situated employees based on her perceived disabling conditions.

111. Defendants terminated Knight's employment without just cause.

112. Defendants terminated Knight's employment based on her disabilities.

113. Alternatively, Defendants terminated Knight's employment based on her perceived disabilities.

114. Defendants violated R.C. § 4112.01 *et seq*. when they discharged Knight based on her disability.

115. Alternatively, Defendants violated R.C. § 4112.01 *et seq*. when they discharged Knight based on her perceived disability.

116. Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Knight based on her disabling condition.



117. Alternatively, Defendants violated R.C. § 4112.01 *et seq.* by discriminating against Knight based on her perceived disabling condition.

118. Knight suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

119. As a direct and proximate result of Defendant's conduct, Knight suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. 126 § 12101 *et seq.*

120. Knight restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Knight suffers from small fiber neuropathy.

122. Knight's small fiber neuropathy substantially impaired one or more of her major life activities including working.

123. As a result of suffering from small fiber neuropathy, Knight is disabled.

124. In the alternative, Defendants perceived Knight as being disabled as a result of her small fiber neuropathy.

125. Knight's small fiber neuropathy constituted a physical impairment.

126. Despite suffering from small fiber neuropathy, Knight could perform her essential job functions with or without reasonable accommodation(s).

127. Knight suffers from sleep apnea.

128. Knight's sleep apnea substantially impaired one or more of her major life activities including working.

129. As a result of suffering from sleep apnea, Knight is disabled.

Electronically Filed 12/03/2019 17:04 / / CV 19 926115 / Confirmation Nbr. 1884273 / CLDLJ
The Employee's Attorney.™


130. In the alternative, Defendants perceived Knight as being disabled as a result of her sleep apnea.

131. Knight's sleep apnea constituted a physical impairment.

132. Despite suffering from sleep apnea, Knight could perform her essential job functions with or without reasonable accommodation(s).

133. Defendants treated Knight differently than other similarly-situated employees based on her disabling conditions.

134. Defendants failed to transfer Knight to an 8-hour shift position because of her disabilities.

135. Alternatively, Defendants failed to transfer Knight to an 8-hour shift position because of her perceived disabilities.

136. Alternatively, Defendants treated Knight differently than other similarly-situated employees based on her perceived disabling conditions.

137. Defendants terminated Knight's employment without just cause.

138. Defendants terminated Knight's employment based on her disabilities.

139. Alternatively, Defendants terminated Knight's employment based on her perceived disabilities.

140. Defendants violated 42 U.S.C. 126 § 12101 *et seq*. when they discharged Knight based on her disability.

141. Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq*. when they discharged Knight based on her perceived disability.

142. Defendants violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Knight based on her disabling condition.

Electronically Filed 12/03/2019 17:04 / / CV 19 926115 / Confirmation Nbr. 1884273 / CLDLJ

The Employee's Attorney.™


143. Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Knight based on her perceived disabling condition.

144. Knight suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

145. As a direct and proximate result of Defendant's conduct, Knight suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 *et seq.*

146. Knight restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Knight informed Defendants of her disabling conditions.

148. Knight requested accommodations from Defendants to assist with her disabilities.

149. Knight requested an accommodation from Defendants to switch to an 8-hour shift rather than a 12-hour shift to assist with her disabilities.

150. Knight's requested accommodations were reasonable.

151. There was an accommodation available that would have been effective and would have not posed an undue hardship to the Clinic.

152. Defendants failed to engage in the interactive process of determining whether Knight needed an accommodation.

153. Defendants failed to provide an accommodation.

154. Defendants violated R.C. § 4112.01 *et seq.* by failing to provide Knight a reasonable accommodation.

155. Knight suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*



156. As a direct and proximate result of Defendants' conduct, Knight suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: FAILURE TO ACCOMMODATE UNDER 42 U.S.C. 126 § 12101 *et seq.***

157. Knight restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. Knight informed Defendants of her disabling conditions.

159. Knight requested accommodations from Defendants to assist with her disabilities.

160. Knight requested an accommodation from Defendants to switch to an 8-hour shift rather than a 12-hour shift to assist with her disabilities.

161. Knight's requested accommodations were reasonable.

162. There was an accommodation available that would have been effective and would have not posed an undue hardship to the Clinic.

163. Defendants failed to engage in the interactive process of determining whether Knight needed an accommodation.

164. Defendants failed to provide an accommodation.

165. Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by failing to provide Knight a reasonable accommodation.

166. Knight suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

167. As a direct and proximate result of Defendants' conduct, Knight suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.



## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

168. Knight restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. During her employment, Knight utilized FMLA leave.

170. During her employment, Knight qualified to utilize FMLA leave.

171. After Knight utilized her qualified FMLA leave, Defendants retaliated against her.

172. Defendants retaliated against Knight by assessing her with attendance points for using qualified FMLA leave.

173. Defendants retaliated against Knight by disciplining her employment.

174. Defendants retaliated against Knight by refusing to allow her to transfer to an 8-hour shift.

175. Defendants retaliated against Knight by terminating her employment.

176. Defendants willfully retaliated against Knight in violation of U.S.C. § 2615(a).

177. As a direct and proximate result of Defendants' wrongful conduct, Knight is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Knight demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Knight to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Knight for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;



(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Knight's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

    Respectfully submitted,

    Brian D. Spitz (0068816)
    Daniel S. Dubow (0095530)
    **THE SPITZ LAW FIRM, LLC**
    25200 Chagrin Blvd., Suite 200
    Beachwood, OH 44122
    Phone: (216) 291-4744
    Fax:    (216) 291-5744
    Email: daniel.dubow@spitzlawfirm.com
    Email: brian.spitz@spitzlawfirm.com

    *Attorneys for Plaintiff*



## JURY DEMAND

Plaintiff Deborah Knight demands a trial by jury by the maximum number of jurors permitted.

                                      Brian D. Spitz (0068816)
                                      Daniel S. Dubow (0095530)



EEOC Form 161 (11/16)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Deborah Knight**
1882 Allendale Avenue
Cleveland, OH 44122

From: **Cleveland Field Office**
EEOC, AJC Fed Bldg
1240 E 9th St, Ste 3001
Cleveland, OH 44199

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 532-2019-01518 | Luisa Burgos, Investigator | (216) 522-7400 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due** for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Cheryl J. Mabry, Director

9-18-19
*(Date Mailed)*

cc:
Lisa Orlando
Counsel
Cleveland Clinic
3050 Science Park Dr.
AC321
Beachwood, OH 44122

Daniel S. DuBow, Esq.
SPITZ LAW FIRM
25200 Chagrin Blvd - Suite 200
Beachwood, OH 44122

Electronically Filed 12/03/2019 17:04 / / CV 19 926115 / Confirmation Nbr. 1884273 / CLDLJ

Enclosure with EEOC
Form 161 (11/16)

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least **6 months** after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*